OPINION
This matter presents a timely appeal from a jury verdict and a judgment rendered upon such verdict by the Jefferson County Common Pleas Court, finding defendant-appellant, Tyrelle S. Askerneese, guilty of possession of crack cocaine with no minimum amount specified, in violation of R.C.2925.11; speeding, in violation of R.C. 4511.21(D)(1); failure to wear a seatbelt, in violation of R.C. 4513.263; driving under suspension, in violation of R.C. 4507.02(A)(1); and falsification, in violation of R.C.2921.13(A)(3), along with his subsequent sentencing thereon.
On November 3, 1998, Raymond Wilson (Wilson) came to appellant's residence in Farrell, Pennsylvania to ask appellant if he wanted to go to Ohio to "see some females and go to the movies." (Tr. 199). At the inception of their journey, Wilson and appellant stopped at Wilson's house and thereafter proceeded to a fuel station to get some gas. (Tr. 204). When the two men arrived at the fuel station, Wilson went into the store to make some purchases, while appellant waited in the car. (Tr. 137). Upon his return, Wilson informed appellant that he had a headache and asked him if he would drive. (Tr. 135-37, 214). Though he did not have a driver's license, appellant obliged and Wilson surrendered the ignition key. (Tr. 201, 204).
With appellant behind the wheel and Wilson directing him, the two men traveled to Steubenville, Ohio. (Tr. 204).
At approximately 5:21 p.m., Ohio State Highway Patrolman, Kevin Kamrada, clocked appellant's vehicle traveling at 66 miles per hour on State Route 7 in northern Jefferson County, which is a 55 mile per hour zone. (Tr. 87). As a result, Trooper Kamrada initiated a traffic stop upon appellant. (Tr. 88).
When Trooper Kamrada approached appellant's vehicle, appellant informed him that he did not have a license and that he mistakenly thought the speed limit was 65 miles per hour. (Tr. 88). Trooper Kamrada responded by asking appellant his name, to which he responded Tyrelle, spelling it T-E-R-R-A-L-L. (Tr. 90). Appellant also attempted to mislead Trooper Kamrada by giving his last name as Smith. (Tr. 91).
With this information in hand, Trooper Kamrada returned to his patrol car to check with the patrol post. The Ohio State Highway Patrol reported that the vehicle which appellant was operating was reported stolen and instructed Trooper Kamrada to wait for backup. Momentarily, Sergeant Rinko arrived at the scene to provide backup for Trooper Kamrada. (Tr. 91).
Working in tandem, the officers approached the vehicle with Trooper Kamrada on the driver's side and Sergeant Rinko on the passenger side. Both appellant and Wilson were seized and placed into custody. (Tr. 91).
Appellant was arrested for having no driver's license, speeding and a safety belt violation, while Wilson was apprehended for permitting an unlicensed driver to drive. (Tr. 92).
Once inside the cruiser, appellant told Trooper Kamrada that his date of birth was November 27, 1978 and that he was headed to a club in Steubenville. (Tr. 92).
While being questioned by Sergeant Rinko, Wilson stated that the vehicle was not stolen. (Tr. 112). Rather, Wilson explained that he purchased the vehicle the previous day on a rent to own basis. (Tr. 143-144). Additionally, Wilson told Sergeant Rinko that he and appellant were on their way to Steubenville "to meet a girl." (Tr. 112).
While Wilson and appellant were being questioned, another Ohio State Highway Patrolman, Trooper Daniel Flohr, arrived on the scene. (Tr. 126).
Accompanied by Trooper Flohr, Trooper Kamrada approached the vehicle to conduct an inventory search when he noticed that there was only one ignition key, which he believed to be a possible sign of being a drug courier. (Tr. 95). Though the Ohio State Patrol reported back to the Troopers that the stolen car report was not valid and that the information of the vehicle's recovery had simply not been entered into the computer, Chief Ken Hager of the Saline Township Police Department was called to the scene with a drug dog. (Tr. 117-118).
As the dog was led around the vehicle it "alerted" to the area of the passenger side of the dash. Troopers Kamrada and Flohr unsuccessfully attempted to procure entry into the glove compartment. (Tr. 119). After transporting Wilson and appellant to the Jefferson County Jail, Chief Hager and Trooper Flohr conducted a thorough inventory search of the vehicle. (Tr. 96, 127). Upon gaining entry to the glove compartment, the officers discovered a .38 Special and a package of baggies of rock, which later tested positive for crack cocaine. (Tr. 120, 127-29).
When appellant arrived at the Jefferson County Justice Center, Trooper Kamrada attempted to question him regarding the evenings occurrences. (Tr. 99). It was at this time that Trooper Kamrada learned that appellant had initially given him a false name and date of birth and that his real name was T-Y-R-E-L-L-E Askerneese and his correct date of birth was October 27, 1978. (Tr. 97). Appellant maintained at trial that he gave false information at the time of his arrest because he was scared and this was the first time that he had been pulled over. (Tr. 201, 209). Appellant further testified that Trooper Kamrada held a gun to his head. (Tr. 210).
Appellant refused to provide police with an oral statement when he was initially questioned on November 3, 1998 at 11:34 p.m., but did submit a written statement on November 4, 1998 at 12:30 p.m. after consulting an attorney. (Tr. 215-216). Wilson provided a written statement to police on November 3, 1998 at 11:47 p.m. (Tr. 144). Each individual placed the blame on the other, with appellant claiming that he had no knowledge of either the gun or drugs and was surprised when they were found. (Tr. 136, 138-39, 202, 204).
On January 6, 1999, Wilson entered into a plea agreement with plaintiff-appellee, State of Ohio, in which he pled guilty to charges of possession of cocaine and carrying a concealed weapon. (Tr. 157). As part of his plea agreement, Wilson also agreed to testify against appellant. (Tr. 157).
During the course of appellant's trial, one of the twelve jurors took ill with no alternate juror available as a replacement. (Tr. 194). The trial court instructed defense counsel to ask appellant if he would be opposed to continuing trial with only eleven jurors. Appellant's counsel informed the court that appellant agreed. (Tr. 194-196). With the prosecution in agreement as well, the trial continued with eleven jurors. (Tr. 196-97).
Appellant was subsequently convicted by a jury of eleven members. This appeal followed.
Appellant's sole assignment of error on appeal alleges:
 "THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF APPELLANT BY ALLOWING TRIAL TO CONTINUE WITH A JURY OF ELEVEN ABSENT AN EXPRESS WAIVER BY APPELLANT."
In making his argument, appellant concedes that his trial counsel did not raise an objection to the continuation of trial with a jury of only eleven members. However, appellant asserts that the trial court's actions in allowing trial to continue without an express waiver by appellant himself rises to the level of plain error under Crim.R. 52(B), which states: "Plain errors of defects affecting substantial rights may be noticed on appeal although they were not brought to the attention of the court."
Though the issue presented by appellant on appeal is not one which has been argued in our courts with any degree of frequency, the Ohio Supreme Court has had occasion to provide a ruling on analogous facts in State exrel. Warner v. Baer (1921), 103 Ohio St. 585.
In Baer, during the course of trial, a juror became ill and was thereafter unable to attend. With the defendant's consent, the trial proceeded before the remaining eleven members who found the defendant guilty of manslaughter. The Ohio Supreme Court recognized a defendant's ability to waive his right to a full twelve-person jury, reasoning that advantages may exist in the defendant's favor by continuing trial without the excused juror. Baer, supra at 612.
As the defendant in Baer relied upon Sections 5 and 10 of the Ohio Constitution, appellant in the instant matter cites R.C. 2945.05 and Crim.R. 23 in support of his argument that he was deprived of his right to a trial by jury. However, the Ohio Supreme Court held in Baer that "* * * although the legislature may not enact any law taking away from persons accused of crime the right or privilege of jury trial, and although courts may not authoritatively try such persons otherwise than before a constitutional jury of twelve men, such persons may with the assent of the court voluntarily waive such right, and after conviction will be estopped from prosecuting error therefrom." Baer, supra at paragraph three of the syllabus. The Court further stated:
 "Agreements, waivers and stipulations made by persons accused of crimes, or by their counsel in their presence, during the course of trial for crime, are, after the termination of the trial, as binding and enforceable upon such persons as like agreements, waivers and stipulations are upon parties to civil actions." Baer, supra at paragraph four of the syllabus.
In the case at bar, after the trial court informed the parties of the juror's condition, a side-bar discussion was held with appellant's counsel, Mr. McKenna, and counsel for appellee, Mr. Mastros, where the following transpired:
 "THE COURT: You know you can agree to proceed with a lesser number than twelve.
"MR. MASTROS: Can we? I'll agree.
"MR. McKENNA: I'll agree.
"THE COURT: You better talk to your client.
"MR. McKENNA: He wants to though. He mentioned to me. Yeah."
After appellant conferred with his counsel, the dialogue continued:
"THE COURT: You ready?
"MR. McKENNA: He [appellant] agrees to go with eleven.
"THE COURT: Okay." (Tr. 195-196).
Thereafter, the trial court disclosed, in open court, the parties' agreement to proceed with only the remaining eleven jurors. (Tr. 196).
 "Little doubt can exist, after the decision of State ex rel. Warner v. Baer, 103 Ohio St., 585, * * *, that defendants charged with crime may waive, or their counsel may waive in their presence, trial by a jury of twelve persons. Where a defendant so on trial consents to such waiver, he will not be heard to deny that he was tried by a jury lawfully constituted." Easler v. State (1927), 25 Ohio App. 273, 275.
While a reviewing court is permitted to notice defects that affect substantial rights although they were not brought to the attention of the trial court under Crim.R. 52(B), the Ohio Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. State v. Capan (1995), Summit App. No. 16892, unreported. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. There was no such miscarriage of justice in this case.
Accordingly, appellant's sole assignment of error is found to be without merit.
The decision of the trial court is affirmed.
Donofrio, J., concurs. Vukovich, J., concurs.